**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAMIE WASHINGTON,<br><br>      Plaintiff,<br><br>v.<br><br>CONVERGENT OUTSOURCING, INC.,<br><br>      Defendant. | Case No. 1:15-cv-07043<br>Honorable Judge John Z. Lee<br>Magistrate Judge Susan E. Cox |

**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant, Convergent Outsourcing, Inc., by and through its attorneys, for its Response to Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment, states as follows:

### I.     INTRODUCTION

Plaintiff Jamie Washington ("Plaintiff") alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by reporting two different account balances to the credit reporting bureaus and by failing to report the debt as disputed to the credit reporting bureaus. Specifically, Plaintiff alleges that Convergent communicated a false account balance to Experian in violation of §1692e(2)(A) and otherwise reported credit information that it knew or should have known to be false in violation of §1692e(8).

Defendant is entitled to summary judgment because Plaintiff cannot demonstrate a genuine dispute regarding any material fact sufficient to warrant a trial on any of her claims. As a preliminary matter, Convergent did not misstate the account balance on the debt at any time. Plaintiff has not offered any evidence to substantiate her claim that the reported amounts were

1

inaccurate, much less that Convergent reported information that it knew or should have known was inaccurate to the credit reporting agencies. Second, assuming, arguendo, that Convergent's failure to report the account as disputed is actionable, Plaintiff's remaining claims fail as a matter of law because the undisputed facts in this case demonstrate that the account was not reported as disputed because Plaintiff's account was inadvertently marked with the wrong disposition code contrary to Convergent's policies and procedures. That said, because any error was unintentional, bona fide, and occurred despite procedures reasonably adapted to avoid such error, and because Plaintiff cannot set forth specific facts showing that there is a genuine issue for trial regarding Convergent's bona fide error defense, Convergent is entitled to summary judgment with respect to the alleged FDCPA violation.

## II. SUMMARY OF RELEVANT FACTS

Plaintiff incurred an obligation to Comcast in the amount of $1,001.54 for cable service and equipment charges at her former address (the "Debt"). Defendant's Response to Plaintiff's Statement of Material Facts and Defendant's Statement of Additional Material Facts, DE #54, ¶¶ 49, 58. On or about December 5, 2013, Comcast referred the Debt to Convergent for collection. DE #54, ¶ 49. Convergent mailed collection notices to Plaintiff, thereafter, setting forth the amount due and owing to Comcast. DE #54, ¶ 50. Convergent also tried, without success, to reach Plaintiff by phone regarding the Debt. DE #54, ¶ 50.

On or about October 17, 2014, Convergent received a facsimile letter from attorney Andrew Finko purportedly sent on behalf of Plaintiff. DE #54, ¶ 51. The letter provided, *inter alia*, that "[t]his client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, and the amount reported is not accurate." DE #54, ¶ 52. Upon receipt of the facsimile, Convergent's employee reviewed the

content of the correspondence and updated the demographic data on the account to reflect Plaintiff's attorney's contact information. DE #54, ¶ 53. Convergent's employee also updated Plaintiff's account with the disposition code "3ACA" to reflect that Plaintiff was represented by an attorney instead of updating the account with the disposition code "3DSP" to reflect that Plaintiff was represented by an attorney and disputed the account. DE #54, ¶ 54. Had Convergent's employee marked the account with the "3DSP" code instead of the "3ACA" code, in accordance with Convergent's internal policies and procedures, the account would have been flagged as "disputed" in Convergent's account system. DE #54, ¶ 55. Accordingly, any subsequent information furnished to the credit reporting bureaus regarding the debt would have reflected that the account was "disputed" by Plaintiff. DE #54, ¶ 55.

On or about March 30, 2015, Comcast informed Convergent that, effective April 1, 2015, Comcast would no longer be including "equipment charges" in account balances placed with Convergent for collection. DE #54, ¶ 56. Comcast also informed Convergent that all existing accounts would be reconciled by month's end (i.e. April 30, 2015) to reflect the removal of any previously forwarded equipment charges going forward. DE #54, ¶ 57. Thereafter, on or about April 19, 2015, Plaintiff's account balance was reduced to $321.54 based on Comcast's corresponding removal of equipment charges in the amount of $680.00. DE #54, ¶ 58.

In accordance with its credit reporting procedures, Convergent reported the updated, reduced balance to the credit reporting bureaus, thereafter. DE #54, ¶ 59. However, because the account was previously marked with the "3ACA" disposition code instead of the "3DSP" disposition code, the updated information furnished to the credit reporting bureaus did not reflect that the account had been previously disputed by Plaintiff. DE #54, ¶¶ 54-55.

### III. LEGAL STANDARD

A party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court "must determine whether the evidence, so construed, establishes genuine disputes of material fact with respect to" plaintiff's claims. *Harper v. Fulton Cnty.,* 748 F.3d 761, 765 (7th Cir. 2014). A genuine dispute of material fact "exists only if there is enough evidence upon which a reasonable [finder of fact] could return a verdict in" the non-movant's favor. *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013). On cross motions for summary judgment, the court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel,* 728 F.3d 731, 734 (7th Cir. 2013).

### IV. ARGUMENT

**A. CONVERGENT IS ENTITLED TO JUDGMENT IN ITS FAVOR BECAUSE PLAINTIFF HAS NOT AND CANNOT PROVE THAT CONVERGENT FALSELY REPRESENTED THE ACCOUNT BALANCE AT ANY TIME.**

Section 1692e(2)(A) prohibits debt collectors from making false or misleading representations in connection with the collection of any debt. To prevail on this claim, Plaintiff must establish that the amounts alleged to be owed by Plaintiff were inaccurate. Plaintiff has not and cannot meet this burden.

Plaintiff contends, in conclusory fashion, that the amounts reported by Convergent as due and owing in October 2014 and April 2015 had to be inaccurate because the account balances were "very different." On this basis, alone, Plaintiff asserts that Convergent somehow misrepresented

4

the account balance because Plaintiff made no payments on the debt between October 2014 and April 2015. But, Plaintiff's argument misses the mark.

Although Plaintiff is correct that she made no payments during this time, it is undisputed that, on or about March 30, 2015, Comcast informed Convergent that, effective April 1, 2015, Comcast would no longer be including "equipment charges" in account balances placed with Convergent for collection. DE #54, ¶ 56.Comcast also informed Convergent that all existing account placement would be reconciled by month's end (i.e. April 30, 2015) to reflect the removal of any previously forwarded equipment charges going forward. DE #54, ¶ 57. Thereafter, on or about April 19, 2015, Plaintiff's account balance was reduced from $1,001.54 to $321.54 based on Comcast's corresponding removal of previously incurred equipment charges in the amount of $680.00. DE #54, ¶ 58. Convergent updated its corresponding reporting to reflect the reduced balance, thereafter as and when required under the Act. DE #54, ¶ 59.

Plaintiff has not offered any evidence to refute the evidence of record which establishes that Comcast elected to reduce the amount claimed to be due and owing from Plaintiff. Although Plaintiff surmises that Comcast's decision to reduce the balance it claimed to be due and owing from Plaintiff "so long after closure and assignment strains credulity," such arguments are nothing more than conjecture and speculation.

Simply put, the FDCPA does not require debt collectors to continue to collect amounts that a creditor has subsequently withdrawn from collection to avoid violating the Act. Had Convergent sought to collect the original balance amount despite the balance reduction, Convergent would have violated the law. Plaintiff cannot have it both ways. Convergent accurately reported the balance that was placed with Convergent as and when required under the FDCPA and is, therefore, entitled to judgment in its favor on Plaintiff's §1692e(2)(A) claim.

**B. CONVERGENT IS ENTITLED TO JUDGMENT IN ITS FAVOR BECAUSE PLAINTIFF HAS NOT AND CANNOT PROVE THAT CONVERGENT REPORTED INFORMATION THAT IT KNEW OR SHOULD HAVE KNOWN TO BE FALSE**

Section 1692e(8) provides, in pertinent part:

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section…
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8).

To prevail on this claim, Plaintiff must prove that: 1) Defendant furnished information which it knew or should have known to be false; and 2) this information was materially false. 15 U.S.C. § 1692e(8); *Moriarity v. Henriques*, No. 11-01208, 2011 WL 4769270, at *4 (E.D. Cal. Oct. 7, 2011)("Unlike §1692e(2), this section requires the plaintiff to show the defendant knew or should have known that the information was false"), citing 15 U.S.C. 1692e(8); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1166, 1176, n. 11 (9th Cir.2006)(noting though the FDCPA is generally a strict liability statute, Congress expressly required elements of knowledge and intent where it deemed them necessary).

As set forth above, the account balance reported by Convergent to the credit reporting bureaus in October 2014 reflected the amount claimed to be due and owing by Plaintiff to Comcast as of that date, i.e. $1,001.54. Although Plaintiff subsequently informed Convergent that the reported amount was "not accurate," Convergent did not update its reporting again until April 19, 2015, at which point Convergent reported the updated, reduced balance of $321.54.

To the extent Plaintiff argues that Convergent is liable to Plaintiff under §1692e(8) because it did not affirmatively report the dispute to Experian between October 2014 and April 2015, this

theory fails as a matter of law. Although 15 U.S.C. §1692e(8) prohibits debt collectors from communicating false credit information, including failing to communicate that a disputed debt is disputed, neither this statute nor any other provision of the FDCPA requires a debt collector to make an affirmative report to anyone that a consumer has disputed a debt. In *Wilhelm v. Credico, Inc.*, 519 F.3d 416 (8th Cir. 2008), the Eighth Circuit considered this very claim, i.e., that the debt collector reported a debt, the debt later was disputed, and the debt collector failed to report the dispute. See 519 F.3d at 417–18. The Eighth Circuit rejected the claim, finding no legal authority to support it and holding that debt collectors have no affirmative duty to report a dispute upon receiving it. *Id*. The reporting requirements of the FDCPA rest upon basic fraud principles, meaning that if a debt collector chooses to communicate with a third party about a debt, the collector must report any known dispute. *Id*. But, there is no requirement that the debt collector make a new report or somehow amend past reports after learning of a dispute. *Id*.

Moreover, any claim that Convergent failed to report the debt as "disputed" after April 17, 2015 also fails because Plaintiff never communicated to Convergent that she disputed the updated balance of $321.54 at any time. Although Plaintiff may argue that a debt collector is required to forever report an account as disputed, neither the plain language of the statute nor prevailing case law supports such a broad application of the law. The Act simply requires debt collectors to refrain from reporting credit information that is known or should be known to be false. Here, Convergent respectfully submits that it did not have knowledge that Plaintiff was "disputing" the updated, reduced balance until such time as this lawsuit was filed. Absent any proof that Plaintiff disputed the update, reduced balance after April 17, 2015, much less that Convergent reported the account after that date, Plaintiff's claims under §1692e(8) should, likewise, be dismissed as a matter of law.

**C. CONVERGENT IS ENTITLED TO JUDGMENT IN ITS FAVOR BECAUSE ANY FAILURE TO REPORT THE ACCOUNT AS DISPUTED WAS AN UNINTENTIONAL, BONA FIDE EFFOR THAT OCCURRED NOTWITHSTANDING THE MAINTENANCE OF PROCEDURES REASONABLY ADAPTED TO AVOID SUCH ERROR.**

Assuming, arguendo, that Convergent failed to report the account as disputed in violation of §1692e(8), the undisputed evidence in this case affirmatively demonstrates that Convergent is entitled to the protection of the FDCPA's bona fide error defense.

The bona fide error defense is a statutorily recognized exception to the strict liability imposed upon debt collectors under the FDCPA. The defense provides, in relevant part:

> A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

See, 15 U.S.C. §1692k(c); see also, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (2010); *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005); *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). Thus, a debt collector is not liable for alleged violations of the Act provided the debt collector can show by a preponderance of the evidence that: (1) the error at issue was unintentional; (2) the violation resulted from a bona fide error; and (3) Defendant maintained procedures reasonably adapted to avoid any such error.

The violation at issue in this case is Convergent's alleged failure to report Plaintiff's account as disputed following receipt of Plaintiff's correspondence on October 17, 2015. However, as demonstrated below, Convergent's failure to report the debt as disputed was an unintentional, bona fide error that occurred despite the existence of policies and procedures reasonably adapted to avoid this specific error from occurring. Accordingly, Convergent is entitled to judgment in its favor pursuant to §1692k(c).

1.      **Convergent's failure to report the account as disputed was not intentional.**

Convergent's failure to report Plaintiff's earlier dispute to the credit reporting bureaus was not intentional. DE #54, ¶ 61. The starting point for proving the bona fide error defense is proving that the violation was unintentional. As a general rule, "[t]he debt collector must only show that the violation was unintentional, not that the communication itself was unintentional." *Lewis v. ACB Business Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998). Although "the intent prong of the bona fide error defense is a subjective test, . . . subjective intent can often only be shown by inferential evidence." *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006). "Evidence of [a defendant's] training for debt collectors and its written admonitions" regarding conduct prohibited by the FDCPA can demonstrate the lack of "inten[t] to violate the FDCPA." *Totten v. Evergreen Prof'l Recoveries, Inc.*, 2014 U.S. Dist. LEXIS 115523, at *5 (E.D. Wash. Aug. 19, 2014).

Here, no reasonable jury could conclude that Convergent intended to report the debt without the dispute notation. As set forth in the declaration of Jeff Hunter, Convergent requires its employees to complete extensive training in order to avoid violating the FDCPA. DE #54, ¶¶ 35-36, 38-39. Convergent also maintains specific policies and procedures to ensure that accounts which are disputed by consumers are internally flagged and properly coded so that subsequent credit reporting updates reflect that the account has been "disputed" by the consumer. DE #54, ¶¶ 40-48. Such policies are continuously reviewed and audited to ensure adherence, consistency and ongoing process improvement. DE #54, ¶ 37. These proofs establish that Convergent's violation was not intentional.

2.      **The coding error at issue was made in good faith.**

It also cannot be disputed that any error made by Convergent was "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Edwards v. Niagara Credit Solutions, Inc.*,

9

584 F.3d 1350, 1353 (11th Cir. 2009) (citing Black's Law Dictionary 186 (8th ed. 2004) (defining "bona fide" as "1. Made in good faith; without fraud or deceit" and "2. Sincere; genuine")). "To be considered a bona fide error, the debt collector's mistake must be objectively reasonable." *Id*. (citing *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006) ("[I]n effect, [the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation.")).

There can be no question that Convergent's error was bona fide. DE #54, ¶ 62. Convergent's employee processed the letter, noted the attorney representation and updated the contact information on Plaintiff's account to ensure that all future communications were sent to Plaintiff's counsel. DE #54, ¶¶ 51-53. Convergent's employee also manually updated Plaintiff's account to reflect the account disposition, albeit with the wrong disposition code, to ensure that the account was properly handled going forward. DE #54, ¶¶ 54-55. The fact that the account was marked with the wrong disposition code underscores the fact that the mistake at issue in this case was of a purely, clerical nature. For all of these reasons, Convergent is entitled to a finding that, as a matter of law, the alleged FDCPA violation was committed in good faith.

### 3. Convergent maintains procedures reasonably adapted to prevent the specific error at issue

The undisputed evidence also demonstrates that the alleged error at issue here occurred despite Convergent's maintenance of policies and procedures reasonably adapted to avoid the specific error complained of here, i.e. – failing to report the account as "disputed" to the credit reporting bureaus. DE #54, ¶¶ 63-65.

Courts routinely use a two-step inquiry to determine whether the "procedures" prong of the FDCPA's bona fide error defense has been established. The first inquiry is whether the debt collector maintained — i.e., actually employed or implemented — procedures to avoid errors. The

second inquiry is whether the procedures were reasonably adapted to avoid the specific error at issue. Convergent has established both prongs.

Convergent maintains extensive policies and procedures which govern how Convergent's employees are to conduct themselves when attempting to collect debts placed with Convergent for collection. DE #54, ¶ 35. Such guidelines have been developed to ensure in compliance with company guidelines, client requirements and applicable law, including but not limited to, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). DE #54, ¶ 36. Convergent's employees are trained regarding each of these policies and procedures at the time of hire and are tested regarding their understanding of such policies and procedures at regular intervals, thereafter. DE #54, ¶ 38. Updates to such policies and procedures, as necessitated by operational changes or legal developments, are promptly communicated to all Convergent employees to ensure their continued familiarity with and adherence to all such policies and procedures. DE #54, ¶ 36. Convergent also performs regular and ongoing audits of all such policies and procedures to ensure adherence, consistency and ongoing process improvement. DE #54, ¶ 37.

Convergent also maintains procedures to avoid the specific violations alleged in Plaintiff's complaint. DE #54, ¶¶ 40-41. Specifically, Convergent has developed and implemented policies and procedures for processing notification that an account is "disputed" for credit reporting purposes. DE #54, ¶ 40. Convergent has also developed and implemented policies and procedures for processing notification that a consumer is represented by counsel. DE #54, ¶ 41.

Upon receipt of notification that a consumer is represented by an attorney, all subsequent communications are to be directed to the attorney instead of the consumer. DE #54, ¶ 42. Convergent's employees are also required to update the account disposition code within Convergent's account system to ensure proper triage and handling of the account in the future. DE

#54, ¶ 43. Accounts marked with a disposition code of "3DSP" are treated as "disputed" accounts under Convergent's credit reporting policy and are to be internally marked as "disputed" within five (5) business days. DE #54, ¶ 44.

Once an account is flagged as "disputed" in Convergent's account system, all subsequent account information furnished to the credit reporting bureaus by Convergent is automatically updated to reflect that the account has been "disputed" by the consumer. DE #54, ¶¶ 45-46. Depending on the information which accompanies the particular dispute, Convergent may also commence an account investigation, close the account or request additional information from the consumer (or the attorney). DE #54, ¶ 44. However, regardless of what actions are taken, the account is marked as disputed to ensure that the dispute notation accompanies any updated credit reporting data pertaining to the account. DE #54, ¶ 46.

Convergent's procedures were reasonably adapted to avoid subsequent credit reporting of accounts without the dispute notation. DE #54, ¶¶ 63-64. As set forth in the declaration of Jeff Hunter, upon receipt of the facsimile from Plaintiff's counsel, Convergent's employee reviewed the correspondence and updated the demographic data on the account to reflect Plaintiff's attorney's contact information in accordance with Convergent's policies. DE #54, ¶¶ 51-53. Convergent's employee also manually updated Plaintiff's account with the disposition code "3ACA" to reflect that Plaintiff was represented by an attorney instead of updating the account with the disposition code "3DSP" to reflect that Plaintiff was represented by an attorney and disputed the account. DE #54, ¶ 54. Had Convergent's employee marked the account with the "3DSP" code instead of the "3ACA" code, the account would have been flagged as "disputed" in Convergent's system. DE #54, ¶ 55. Accordingly, any subsequent information furnished to the credit reporting bureaus regarding the account would have been automatically updated to reflect

that the account had been "disputed" by the consumer, thereby, preventing the very error at issue in this case. DE #54, ¶¶ 55, 63-65.

Although Plaintiff may argue that such policies are somehow inadequate, "[t]he FDCPA does not require that the procedures be fool proof; rather, it is enough that the procedures are 'reasonably adapted to avoid any such error.'" *Frye v. Bowman*, 193 F. Supp. 2d 1070, 1088 (S.D. Ind. 2002) (quoting 15 U.S.C. § 1692k(c)); see also *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538-39 (7th Cir. 2005)). Moreover, for purposes of the bona fide error defense, a "procedure" is simply a series of steps followed in a regular orderly definite way. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010); *Leeb v Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015). Such procedures must be reasonable but they need not be "state of the art." *Ross v. RJM Acquisitions Funding, LLC* 480 F.3d 493 (7th Cir. 2007).

Convergent has demonstrated by a preponderance of the evidence that any reporting error is properly excused by the bona fide error defense. The violation at issue was not intentional. Furthermore, the coding mistake was a plausible, clerical mistake. Finally, Convergent's attorney representation and credit reporting procedures are reasonably adapted to avoid the error complained of by Plaintiff. Accordingly, Convergent is entitled to summary judgment as a matter of law and Plaintiff's Complaint should be dismissed with prejudice.

## V. CONCLUSION

For all of these reasons, Defendant Convergent Outsourcing, Inc., respectfully respects that this Court grant its motion for summary judgment, enter judgment in its favor and award all other relief as is just and proper.

Respectfully Submitted,

Convergent Outsourcing, Inc.

/s/ Charity A. Olson
Charity A. Olson (P68295)

Charity A. Olson
**OLSON LAW GROUP**
2723 S. State St., Ste. 150
Ann Arbor, MI 48104
Tel: (734) 222-5179
Fax: (866) 941-8712
colson@olsonlawpc.com

## CERTIFICATE OF SERVICE

I, Charity A. Olson, hereby state that on August 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ Charity A. Olson
Charity A. Olson (P68295)
**OLSON LAW GROUP**